|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff.*<br><br>v.<br><br>BARRY DUCLOS,<br>*Defendant.* | No. 3:18-cr-196 (VAB) |

## RULING ON MOTION TO SUPPRESS AND MOTION TO DISMISS

On March 2, 2020, Barry Duclos ("Defendant") moved to suppress statements made to law enforcement agents prior to his arrest and statements made to law enforcement agents and Assistant United States Attorney Vanessa Richards after his arrest. Mot. to Suppress, ECF No. 93 (Mar. 2, 2020) ("Mot. to Suppress"). That same day, Mr. Duclos also moved to dismiss Counts One through Eight and Count Ten of the Indictment.[1] Mot. to Dismiss Indictment, ECF No. 94 (Mar. 2, 2020) ("Mot. to Dismiss").

On March 17, 2020, the United States of America (the "Government") opposed Mr. Duclos's motions. Gov't's Omnibus Opp'n to Def.'s Pretrial Mots., ECF No. 101 (Mar. 17, 2020) ("Gov't Opp'n").

On June 21, 2021, the Court held an evidentiary hearing and heard oral argument on the motions. Min. Entry, ECF No. 155 (June 21, 2021).

For the following reasons, Defendant's motion to suppress is **DENIED** and his motion to dismiss is **DENIED**.

---

[1] The Court notes that since Mr. Duclos filed his pretrial motions, a Superseding Indictment and a Second Superseding Indictment have been filed against him. *See* Superseding Indictment, ECF No. 118 (July 15, 2020); Second Superseding Indictment, ECF No. 129 (Apr. 12, 2021). As Mr. Duclos's challenges are still applicable to the Second Superseding Indictment, the Court will address his motions on their merits.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Findings of Fact[2]

### 1. February 12, 2018

On February 12, 2018, at approximately 2:50 p.m., law enforcement arrived at Mr. Duclos's residence at 16 Yantic Street, Norwich, Connecticut, to execute a federal search warrant. According to U.S. Postal Inspector Jeremy Tendler, law enforcement officers knocked on the door and then breached Mr. Duclos's reinforced front door with a battering ram.

By the time Inspector Tendler went into Mr. Duclos's apartment, Mr. Duclos had been placed on the floor and handcuffed with plastic zip cuffs. Connecticut State Police Sergeant Keith Graham, in the presence of Inspector Tendler, issued Mr. Duclos a verbal *Miranda* warning. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Inspector Tendler heard Mr. Duclos say that he understood his rights. At that time, although asked, Mr. Duclos said he did not need – nor did he ask for – any medical attention.

Inspector Tendler then brought Mr. Duclos outside of the house, while other members of the search warrant team continued to photograph and search Mr. Duclos's residence.

At that time, according to Inspector Tendler, Mr. Duclos's eyes appeared clear. He did not have any balance issues, or express any medical concerns. Mr. Duclos told Inspector Tendler that he used fentanyl on a daily basis, but had not used any on that day. Inspector Tendler had no difficulty communicating with Mr. Duclos, and Mr. Duclos appeared to understand Inspector Tendler.

---

[2] The Court makes the following findings, unless expressly stated otherwise, based on the testimony of the Government's witnesses: U.S. Postal Inspector Jeremy Tendler, then Drug Enforcement Administration Task Force Officer Brian McPadden, and Homeland Security Investigations Special Agent Joel Barry.

After about thirty or forty minutes, Inspector Tendler brought Mr. Duclos back inside. Inspector Tendler sat him down in a bedroom. Mr. Duclos sat on a chair and his restraints were changed so that his hands were cuffed in front of him. Other officers continued to search the residence.

That same day, at approximately 4:20 p.m., Inspector Tendler advised Mr. Duclos that law enforcement would seek a federal warrant for his arrest. Inspector Tendler provided Mr. Duclos with a United States Postal Inspection Service Form 1067, entitled "Warning and Waiver of Rights" (the "Form"). First, Inspector Tendler confirmed that Mr. Duclos could read and write in English. Then, Inspector Tendler read the form aloud while Mr. Duclos appeared to follow along.

The Form contained two parts: a warning and a waiver. Mr. Duclos signed the Form twice, immediately under the language of the warning and immediately under the language of the waiver. Hearing Ex. 2. DEA Task Force Officer McPadden and Homeland Security Special Agent Barry signed the Form as well. *Id*. They also witnessed both Inspector Tendler reading the form aloud to Mr. Duclos and Mr. Duclos signing the form in both places.

After signing the Form, Mr. Duclos began speaking to Inspector Tendler. During this conversation, Mr. Duclos's demeanor did not change, and his answers were in a narrative form. According to Inspector Tendler, Mr. Duclos had no difficulty communicating with him. Mr. Duclos stated that he researched online before deciding to start buying and selling fentanyl. Mr. Duclos admitted to buying and selling fentanyl on the dark web using the moniker "1NOLEFB1."

Inspector Tendler eventually brought Mr. Duclos by car to the Middletown Police Department. En route, Mr. Duclos continued speaking to Inspector Tendler. Mr. Duclos

described the various formulations and solubility of fentanyl, as well as the nuances of microgram fentanyl dosing. Mr. Duclos also stated that although he had been a fentanyl user for a long time, he had never overdosed and never gone through withdrawals.

Throughout his interactions with Inspector Tendler on February 12, 2018, and based on the observations of DEA Task Force Officer McPadden and Homeland Security Special Agent Barry as well, Mr. Duclos appeared alert and coherent, with no visible signs or symptoms of intoxication or withdrawal. Mr. Duclos did not appear confused or unable to follow law enforcement officers' questions. Inspector Tendler asked Mr. Duclos if he was sick or feeling the effects of fentanyl or fentanyl withdrawals and Mr. Duclos repeatedly assured Inspector Tendler he was fine. Also, although the three law enforcement officials, as well as others, had firearms with them, there is no record evidence of any firearm being out of a holster or otherwise pointed towards or directed at Mr. Duclos during the course of any of his statements to law enforcement officials.

The next day, Inspector Tendler brought Mr. Duclos to the federal courthouse in Hartford, Connecticut for his initial appearance. *See* Min. Entry, ECF No. 5 (Feb. 13, 2018). Inspector Tendler observed those proceedings and did not notice anything incoherent about Mr. Duclos's appearance there.

### 2. March 26, 2018

On or about March 26, 2018, Mr. Duclos attended a proffer session at the United States District Court for the District of Connecticut in Bridgeport (the "Proffer Session"). Mr. Duclos, his attorney, Assistant Federal Defender Charles Willson, Assistant United States Attorney Vanessa Richards, DEA Special Agent Margaret Lang, and Inspector Tendler attended the

Proffer Session. The Government provided Mr. Duclos with a proposed proffer agreement (the "Proffer Agreement").

Before questioning began, AUSA Richards explained the terms of the Proffer Agreement, including circumstances in which Mr. Duclos's statements could be used against him. *See* Hearing Ex. 5. Mr. Duclos, Attorney Willson, AUSA Richards, and Agent Lang signed the Proffer Agreement. *Id.*

During the Proffer Session, Mr. Duclos confirmed that he did not feel any effects of his fentanyl withdrawal up until his fourth day at Wyatt Detention Facility ("Wyatt"). Mr. Duclos did not appear intoxicated or suffering from withdrawal symptoms. Mr. Duclos's speech was clear and measured and his responses were appropriate and extensive. Attorney Willson did not raise any concerns over Mr. Duclos's ability to answer questions due to being under the influence of drugs or suffering from withdrawal.

### 3. Second Superseding Indictment

The Second Superseding Indictment charges Mr. Duclos in Counts One through Eight with "knowingly and intentionally possess[ing] with intent to distribute and . . . distribut[ing] a mixture and substance containing a detectable amount of cyclopropyl fentanyl, a Schedule I controlled substance analogue" in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C). Second Superseding Indictment.

Count Ten of the Second Superseding Indictment charges Mr. Duclos with

> Knowingly possess[ing] a firearm, that is, a YHM Model 15 firearm, bearing serial number YH6400 with a Hardened Arms upper receiver, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, possession with intent to distribute and distribution of fentanyl and its analogues, in violation of Title 21, United States Code, Section 841(a)(1), as charged in Counts Six to Nine of this Indictment.

*Id*.

### B. Procedural Background

On February 13, 2018, the Government filed a criminal complaint against Mr. Duclos. Compl., ECF No. 1 (Feb. 13, 2018).

On September 6, 2018, a grand jury indicted Mr. Duclos. Indictment, ECF No. 60 (Sept. 16, 2018).

On September 20, 2018, at his arraignment, Mr. Duclos entered a plea of not guilty. Min. Entry, ECF No. 64 (Sept. 20, 2018).

On March 2, 2020, Mr. Duclos moved to suppress statements made before and after his arrest, and to dismiss Counts One through Eight as well as Count Ten. Mot. to Suppress; Mot. to Dismiss; Mem. in Supp. of Mot. to Dismiss Indictment, ECF No. 94-1 (Mar. 2, 2020) ("Def. Mem.").

On March 17, 2020, the Government opposed Mr. Duclos's pretrial motions. Gov't Opp'n.

On July 15, 2020, a superseding indictment was filed against Mr. Duclos. Superseding Indictment.

On April 12, 2021, a second superseding indictment was filed against Mr. Duclos. Second Superseding Indictment.

On June 18, 2021, the Government filed a supplemental memorandum in support of its

opposition. Suppl. Mem. in Supp. of Gov't's Opp'n to Def's Mot. to Suppress, ECF No. 153

(June 18, 2021) ("Gov't Suppl. Opp'n").

On June 21, 2021, the Court held a hearing on the pending motions. Min. Entry, ECF No.

155 (June 21, 2021).

## II.    STANDARD OF REVIEW

### A.  Motion to Suppress

"It is well settled that before a suspect may properly be subjected to custodial

interrogation, he must be informed that he has the right to remain silent, that any statement he

makes may be used in evidence against him, and that he has the right to have counsel present."

*United States v. Mathurin*, 148 F.3d 68, 69 (2d Cir. 1998) (citing *Miranda*, 384 U.S. at 467-71).

"In *Miranda v. Arizona*, the Supreme Court made clear that the prosecution may not use

statements made by a suspect under custodial interrogation unless the suspect (1) has been

apprised of his Fifth Amendment rights, and (2) knowingly, intelligently, and voluntarily waives

those rights." *United States v. Oehne*, 698 F.3d 119, 122 (2d Cir. 2012) (citing *Miranda*, 384

U.S. at 444-45).

When an individual is questioned in police custody, "[h]e must be warned prior to any

questioning that he has the right to remain silent, that anything he says can be used against him

in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford

an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda*,

384 U.S. at 479. "[C]ourts must presume that a defendant did not waive his [*Miranda*]

rights." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). "To prove a valid waiver, the

government must show (1) that the relinquishment of the defendant's rights was voluntary, and

(2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995) (citing *Moran v. Burbine,* 475 U.S. 412, 421 (1986)).

To determine whether a defendant has knowingly and voluntarily waived his *Miranda* rights, courts must consider the "totality of the circumstances." *Fare v. Michael C.*, 442 U.S. 707, 724-25 (1979). "The government bears the burden of establishing by a preponderance of the evidence that the defendant knowingly and voluntarily waived his rights." *United States v. Fable*, No. 3:18-CR-00003 (JCH), 2018 WL 3727346, at *7 (D. Conn. July 24, 2018) (citing *United States v. Taylor*, 745 F.3d 15, 23 (2d Cir. 2014)); *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010).

### B. Motion to Dismiss

"A defendant faces a high standard in seeking to dismiss an indictment, because an indictment need provide the defendant only a plain, concise, and definite written statement of the essential facts constituting the offense charged." *United States v. Smith*, 985 F. Supp. 2d 547, 561 (S.D.N.Y. 2014).

"It bears recalling that [the Second Circuit has] consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Bout,* 731 F.3d 233, 240 (2d Cir. 2013) (emphasis and internal quotation marks omitted). "The indictment is sufficient if it 'contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and ... enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Post,* 950 F. Supp. 2d at 527

(alteration in original) (quoting *Hamling v. United States,* 418 U.S. 87, 117 (1974)); *see also United States v. Alfonso,* 143 F.3d 772, 776 (2d Cir. 1998) (same).

However, "[a] charge in an indictment is insufficient and must be dismissed when it does not describe conduct that is a violation of the criminal statute charged." *United States v. Litvak*, No. 3:13-CR-19 JCH, 2013 WL 5740891, at *2 (D. Conn. Oct. 21, 2013) (citing *Russell v. United States,* 369 U.S. 749, 764–65 (1962); *United States v. Pirro,* 212 F.3d 86, 93 (2d Cir. 2000)). "In ruling on a motion to dismiss, a court views the indictment as a whole and assumes its factual allegations to be true." *Id.* (citing *Boyce Motor Lines v. United States,* 342 U.S. 337, 343 n.16 (1952)). Rule 12(b) permits only pretrial motions "that the court can determine without a trial of the general issue." Fed. R.Crim. Proc. 12(b)(2); *Alfonso,* 143 F.3d at 777 (2d Cir. 1998) (stating that any defense or objection which is capable of determination without the trial of the general issue may be raised by pre-trial motion).

## III. DISCUSSION

### A. Motion to Suppress

Mr. Duclos moves to suppress:

> a) Any information the defendant allegedly provided to law enforcement agents on or about February 12, 2018, prior to his arrest by an agent of the U.S. Postal Inspector at that time;
> b) Any information the defendant allegedly provided to law enforcement agents on or about February 12, 2018, in connection with or subsequent to his arrest by an agent of the U.S. Postal Inspector at that time;
> c) Any information that he allegedly provided to law enforcement agents and any Assistant United States Attorney on or about March 27, 2018 subsequent to his arrest.

Mot to Suppress at 1. He argues that "he was not properly *Mirandized* when any statements were allegedly made." *Id.* He further argues that "any statements allegedly made by [him] were knowingly or voluntarily given" because he "was under the influence of drugs and/or suffering

the effects of drug withdrawal and was incapable of waiving his privilege against self-discrimination." *Id.*

The Government argues that Mr. Duclos "was Mirandized not once, but twice" in relation to "his statements of February 12, 2018." Gov't Opp'n at 2. The Government alleges that Mr. Duclos "received verbal *Miranda* [warnings], which he acknowledged and waived orally prior to speaking with officers during the execution of the search of his residence" and "received a second *Miranda* warning in writing, which Inspector Tendler read aloud as [Mr.] Duclos followed along and which [Mr.] Duclos then signed to acknowledge he understood his rights and signed again to indicate that he wanted to waive his rights to speak to officers." *Id.*

"Regarding [Mr.] Duclos's statements of March 26, 2018," the Government alleges that Mr. Duclos "was represented by [Attorney] Willson at the [P]roffer [S]ession," arguing "his right to have counsel present during questioning was fulfilled" and "no *Miranda* violation exists on which to suppress those statements." *Id.*

The Government further allege that "there is no evidence that the defendant was intoxicated or in withdrawal at the time he spoke to law enforcement" and contend that "the officers acted reasonably in obtaining [Mr.] Duclos's statements and because no police misconduct is alleged, suppression is not warranted, and his motion to suppress should be denied." *Id.* at 2-3.

In its supplemental briefing, the Government also argues that Mr. Duclos's "medical records serve as a further basis to deny the motion to suppress." Gov't Suppl. Mem. at 2. The Government cites medical records that indicate (1) Mr. Duclos's withdrawal symptoms began on February 13, 2018 after the disputed February 12, 2018 statements were made and (2) Mr. Duclos did not seek "treatment for symptoms of drug withdrawal or intoxication" between late

February 2018 and March 26, 2018 when the disputes statements were made at the Proffer Session. *Id.*

The Court agrees.

"Statements made to police while the speaker is intoxicated or under the influence of drugs or alcohol are not *per se* involuntary." *United States v. Maldonado,* No. 11-CR-6166CJS, 2012 WL 826998, at *4 (W.D.N.Y. Feb. 17, 2012), *report and recommendation adopted*, No. 11-CR-6166, 2012 WL 827033 (W.D.N.Y. Mar. 9, 2012); *Scott v. Fisher,* 652 F. Supp. 2d 380, 431 (W.D.N.Y. 2009) (collecting cases). "Rather, the court must evaluate whether the defendant understood his rights and knowingly waived them." *Id.*

"[E]xamin[ing] the totality of all the surrounding circumstances, including the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials," *Taylor*, 745 F.3d at 23 (internal citations and quotation marks omitted), the Court finds that Mr. Duclos's waiver was knowing and voluntary. Mr. Duclos contends that he was not properly *Mirandized* because his waiver and statements were not "knowingly or voluntarily given" due the influence of drugs and/or withdrawal symptoms. Def. Mot. The Court, however, does not find any evidence that suggests that Mr. Duclos was actively under the influence of drugs or drug withdrawal. Mr. Duclos stated that he took fentanyl the prior day, Gov't Opp'n at 3, but there is no evidence that he was still under the influence of that use or that withdrawal symptoms had set in. Medical records and Mr. Duclos's statements at the Proffer Session indicate that he did not go into withdrawal until he was in custody at Wyatt. *Id.* at 7; Gov't Suppl. Mem. at 2. The Court finds that there is insufficient evidence that any possible drug influence or withdrawal affected Mr. Duclos's ability to knowingly and voluntarily waive his *Miranda* rights.

Although "[a]n individual's mental state should be considered in the voluntariness inquiry to the extent it allowed law enforcement to coerce the individual," *Taylor*, 745 F.3d at 24 (citing *Colorado v. Connelly*, 479 U.S. 157, 164–65 (1986)), there is no indication that law enforcement officers who administered the *Miranda* warnings were aware of any drug influence on Mr. Duclos that would prevent his knowing waiver. *See United States* v. *O'Brien*, 926 F.3d 57, 74 (2d Cir. 2019) ("The finding as to O'Brien's comprehension of the *Miranda* warnings was supported by, *inter alia*, the agents' testimony that O'Brien was alert, focused, and never evinced any difficulty understanding the agents or communicating with them, and that he said he understood those rights when they were read to him."); *United States v. Stanley*, No. 3:16-cr-25 (SRU), 2016 WL 3093361 at *2 (D. Conn. June 1, 2016) (relying, in part, on "testimony of the officers about [Defendant's] demeanor and apparent ability to understand his rights" as basis for finding a knowing and voluntary waiver of *Miranda* rights). "In general, a suspect who reads, acknowledges, and signs an 'advice of rights' form before making a statement has knowingly and voluntarily waived *Miranda* rights." *Taylor*, 745 F.3d at 23.

While Mr. Duclos argues that evidence of drug paraphernalia in his home suggests intoxication, "these observations alone are not enough to find that law enforcement knew, or should have known, of any intoxication at the time of interview." *United States v. Wigginton*, No. 6:15-CR-5-GFVT-HAI-1, 2015 WL 8527606, at *9 (E.D. Ky., Oct. 28, 2015); *see id.* (upholding as a knowing and voluntary waiver of *Miranda* rights despite the presence of "a nearly empty liquor bottle, various pill bottles containing medications, and [being] informed that Defendant 'went out' the night before").

Indeed, there is nothing in this record to suggest that Mr. Duclos at any time exhibited a "diminished mental state," such that any testimony elicited from him was the result of his will

being "overborne" by these officers. *See Taylor*, 745 F.3d at 25 ("[T]he decisive issue is whether the will was 'overborne' by the police, so that the defendant is not using such faculties as he has."); *see id.* (finding that in that case, "as th[e] interview progressed, it became clear to the officers (as their testimony confirms) that Taylor was in and out of consciousness while giving his statement, and in a trance or a stupor most of the time when not actually asleep. Thus, the officers' persistent questioning took undue advantage of Taylor's diminished mental state, and ultimately overbore his will.").

As to the statements made on March 26, 2018, the Court again finds no evidence that Mr. Duclos was under the influence of drugs or withdrawal symptoms. And even if there was evidence, Mr. Duclos's statements are inadmissible under the Proffer Agreement, *see* Hearing Ex. 5, and Mr. Duclos's Fifth Amendment right was satisfied by the presence of his attorney during the Proffer Session, *see Edwards v. Arizona*, 451 U.S. 477, 485–86 (1981) ("The Fifth Amendment right identified in *Miranda* is the right to have counsel present at any custodial interrogation.").

Accordingly, the Court finds that the Government has met its burden of demonstrating a knowing and voluntary waiver, *see Berghuis*, 560 U.S. at 384, and will deny Mr. Duclos's motion to suppress.

### B. Motion to Dismiss

Mr. Duclos argues that Count One through Eight of the Indictment are unconstitutional under the void-for-vagueness doctrine. Def. Mem. at 6. He contends that 21 U.S.C. § 841 "does not provide a clear definition of what 'any analogue' is nor does it define what a 'detectable amount' is or could be." *Id.*

The Government argues that "the allegations against [Mr. Duclos] are straightforward and the [G]overnment provided him with fair notice and warning that the charged conduct was prohibited by the statute." Gov't Opp'n at 21. The Government contends that "the United States Supreme Court and the Second Circuit Court of Appeals have considered and rejected vagueness challenges to the Analogue Statute, finding the statute's language sufficiently clear to convey to an ordinary person what conduct the statute intends to proscribe." *Id.* at 21-22 (citing *McFadden v. United States*, 576 U.S. 186, 196-98 (2015); *United States v. Demott*, 906 F.3d 231, 237 (2d Cir. 2018); *United States v. Roberts*, 363 F.3d 118, 123 (2d Cir. 2004); *United States v. Ansaldi*, 372 F.3d 118, 123-24 (2d Cir. 2004)). The Government also argues that "a detectable amount" is not "so vague as to render the statute unconstitutional" because "its plain meaning is obvious to a person of ordinary intelligence." *Id.* at 22 (citing *Chapman v. United States*, 500 U.S. 453, 467–68 (1991) (rejecting the defendant's argument that 21 U.S.C. Section 841 was void for vagueness due to the "mixture and substance" language contained in the penalty provisions)).

Mr. Duclos argues that Count Ten of the Indictment also is unconstitutional under the void-for-vagueness doctrine because "there are textual defects in enhancement penalties brought under Title 18 U.S.C. [§] 924." Def. Mem. at 7 (citing *United States v. Davis*, 139 S. Ct. 2319 (2019)). He argues that "nowhere in the Indictment are there any factual allegations that the defendant ever used a firearm in any alleged crime, let alone the one contained in Counts One through Eight." *Id.* Although the firearm in question "was alleged to have been found in [his] residence," Mr. Duclos argues that the indictment "does [not] indicate that [he] is alleged to have sold any of the controlled substances from that family residence where he was arrested." *Id.*

The Government argues that Mr. Duclos "misunderstands the application of *Davis* and his attempts to make a sufficiency argument under the guise of a constitutionality infirmity fail."

Gov't Opp'n at 23. The Government argues that *Davis* addresses the "residual clause of the crime of violence definition," and Count Ten in this case "is not predicated on the residual clause," but "[r]ather, the charge is predicated on [Mr. Duclos's] possession of the firearm in furtherance of a drug trafficking crime, that is, possession with intent to distribute and distribution of fentanyl and its analogues." *Id.* The Government argues that "[m]ultiple courts since *Davis* have specifically refused to extend *Davis*'s holding to [§] 924(c) charges predicated on drug offenses." *Id.* (citing *United States v. Navarro*, 931 F.3d 1298, 1302-03 (11th Cir. 2019); *United States v. Muir*, 2019 WL 6117562, at *1-2 (S.D.N.Y. Nov. 18, 2019); *Roman v. United States*, 2019 WL 4863382, at *2 (S.D.N.Y. Oct. 2, 2019)).

The Government further argues that Mr. Duclos's "argument that the [G]overnment has not sufficiently placed him on notice of the [G]overnment's theory of prosecution" is "unavailing." *Id.* In the Government's view, "the [I]ndictment properly alleges the crime with which [Mr. Duclos] was charged and which the [G]overnment will prove at trial." *Id.* at 25.

The Court agrees.

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Courts in this Circuit have determined that the two statutes that Mr. Duclos challenges are sufficiently definite.

First, 21 U.S.C. § 841, et al. has been upheld against vagueness challenges. *See McFadden*, 576 U.S. at 197 (rejecting Petitioner's vagueness challenge because "it has no application in the interpretation of an unambiguous statute such as [21 U.S.C. § 841] and holding that "a scienter requirement in a statute alleviates vagueness concerns, narrows the scope of []its

prohibition, and limits prosecutorial discretion." (internal citations, quotation marks and alterations omitted)); *Demott*, 906 F.3d at 237 (holding the "viability" of vagueness arguments are "substantially undercut by the fact that the Supreme Court, our court, and other circuits have upheld the Analogue Act against vagueness challenges.").

Second, 18 U.S.C. 942(c) also is valid. As the Government explained, "[i]n *Davis,* the Supreme Court held that Section 924(c)(3)(B)'s residual clause of the crime of violence definition was unconstitutionally vague in light of *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) and *Johnson v. United States*, 135 S. Ct. 2551 (2015)." Gov't Opp'n at 23. Mr. Duclos is charged with a drug trafficking crime, and "[n]othing in *Dimaya* or *Davis* impacts the definition of a drug trafficking offense." *Muir*, 2019 WL 6117562, at *1 (rejecting a void for vagueness challenge to sentence for a 18 U.S.C. 942(c)(1)(A)(ii) conviction); *United States v. Rhodes*, No. 12 CR 31 (VM), 2020 WL 1814116, at *1 (S.D.N.Y. Apr. 9, 2020 ) ("Because *Davis* concerns crimes of violence rather than drug trafficking crimes, it does not affect the validity of either charge to which Rhodes pleaded guilty."); *United States v. Murphy*, No. 01-CR-6087 CJS, 2020 WL 2137166, at *3 n.12 (W.D.N.Y. Jan. 29, 2020) (declining to vacate convictions because the some of the challenged counts "involved using/carrying/ and or discharging a firearm during/in relation to a drug trafficking offense, and such convictions are not affected by *Johnson, Dimaya* or *Davis.*"); *Roman*, 2019 WL 4863382, at *2 (finding "drug trafficking remains a valid [§ 924(c)] predicate offense").

As other courts have addressed and resolved these vagueness challenges to 21 U.S.C. § 841 and 18 U.S.C. § 942(c), the Court rejects Mr. Duclos's contention that Counts One through Eight and Count Ten should be dismissed for vagueness.

To the extent Mr. Duclos's motion questions the sufficiency of the Government's evidence, such challenges are better suited for trial, where factual determinations can be made. *See* Fed. R. Crim. P. 12(b) (limiting pretrial motions to "any defense, objection, or request that the court can determine without a trial on the merits"); *Alfonso*, 143 F.3d at 776 (holding that a district court "look[ing] beyond the face of the indictment and dr[awing] inferences as to the proof that would be introduced by the government at trial . . . [to] inquir[e] into the sufficiency of the evidence [is] premature"); *United States v. Triumph Cap. Grp., Inc.*, 260 F. Supp. 2d 462, 465 (D. Conn. 2002) (citing *Alfonso,* 143 F.3d at 776–77) ("Thus, a technically sufficient indictment 'is not subject to dismissal on the basis of factual questions, the resolution of which must await trial.'").

Accordingly, Mr. Duclos's motion to dismiss will be denied.

## IV.    CONCLUSION

For the reasons discussed above, the motion to suppress is **DENIED** and the motion to dismiss is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 24th day of June, 2021.

　/s/ Victor A. Bolden　　　　　　
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE
